**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No. 06-cv-00256-REB-MEH

JONATHAN R. WEINBACH, D.D.S., M.S. and
JONATHAN R. WEINBACH, D.D.S., M.S. PC, a Colorado professional corporation,

      Plaintiffs,

v.

ORTHODONTIC CENTERS OF COLORADO, INC. a Delaware corporation and
ORTHODONTIC CENTERS OF AMERICA, INC., a Delaware corporation,

      Defendants.

---

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

    This matter is before me on the plaintiffs' **Motion for Summary Judgment Declaring Defendants' Business Management Agreement Illegal** [#41], filed November 21, 2006.  The defendants filed a response [#49], and the plaintiffs filed a reply [#51].  I grant the motion.[1]

## I.  JURISDICTION

    I have jurisdiction of this case under 28 U.S.C. § 1332 (diversity).

## II.  STANDARD OF REVIEW

    Under **FED. R. CIV. P. 56(c)**, summary judgment is proper only if the evidence,

---

[1]  The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

viewed in a light most favorable to the nonmoving party, demonstrates that there is no

genuine issue as to any material fact, and the moving party is entitled to summary

judgment as a matter of law. ***Farthing v. City of Shawnee, Kan***.  39 F.3d 1131, 1134

(10th Cir. 1994).  A "material" fact is one "that might affect the outcome of the suit under

the governing law," ***Id.*** at 1135 (citing ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242,

248 (1986)), and a "genuine" issue is one where "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." ***Id.*** (citing ***Anderson***,

477 U.S. at 248).

### III.  PROCEDURAL BACKGROUND

The plaintiffs are Jonathan R. Weinbach, D.D.S., M.S. and a Colorado

professional corporation of the same name.  Dr. Weinbach is licensed to practice

dentistry in the State of Colorado, and specializes in orthodontics.  I will refer to the

plaintiffs collectively as Dr. Weinbach, unless a specific reference to the professional

corporation or individual is required.  On December 20, 1995, Dr. Weinbach, acting as

an individual, entered into an agreement with defendants Orthodontic Centers of

Colorado, Inc. (OCC) and Orthodontic Centers of America, Inc. (OCA).  A copy of the

agreement is attached to the motion for summary judgment as Exhibit 3.  The

agreement is titled Business Management Agreement (BMA).  I will refer to specific

provisions in the BMA by their paragraph number (e.g., BMA ¶ 1.1).  In 1996, the

parties executed an agreement assigning Dr. Weinbach's rights and obligations under

the BMA, as an individual, to Dr. Weinbach's professional corporation. *Motion for*

*summary judgment*, Exhibit 4.

On February 15, 2006, Dr. Weinbach filed his complaint in this case, asserting

2

several claims related to the BMA.  In his first claim for relief, Dr. Weinbach seeks a

declaratory judgment that the BMA is illegal and unenforceable because it violates the

public policy of the state of Colorado, and because it violates the provisions of the

Dental Practice Law of Colorado.  §§12-35-101 to 12-35-202, C.R.S.  *Complaint*,

¶¶ 42 - 48.  The other claims asserted in the complaint, including breach of contract,

fraud, and negligence, are not relevant to the motion for summary judgment.

On March 14, 2006, the defendants filed petitions for relief under Chapter

Eleven of the United States Bankruptcy Code in the United States Bankruptcy Court for

the Eastern District of Louisiana.  Subsequently, Dr. Weinbach, and several other

plaintiffs who had asserted similar claims against the defendants, obtained an order

granting them relief from the automatic stay of 11 U.S.C. § 362.  *Plaintiffs' sur-reply*

[#40], filed September 21, 2006, Exhibit A (Order of the Honorable Jerry A. Brown,

United States Bankruptcy Judge, Eastern District of Louisiana).  Judge Brown's order

grants Dr. Weinbach relief from the automatic stay for the limited purpose of obtaining

a determination from this court of whether the BMA is illegal on its face because it

violates state law.  That determination is to be based solely on the nature of the BMA's

provisions, and not based on the way those provisions were performed or enforced

over time.  *Id.*, Exhibit A, p. 4.   In his motion for summary judgment, Dr. Weinbach

seeks a judgment as a matter of law declaring that, under Colorado law, the BMA is

illegal on its face and that the BMA is unenforceable as a result.

Three other cases presenting essentially the same issue are pending before

other District Judges in the United States District of Colorado.  After reviewing the

briefing and the law relevant to Dr. Weinbach's motion for summary judgment, I noted

3

that the Honorable Marcia S. Krieger, United States District Judge for the District of Colorado, recently entered an order that addresses essentially the same issues presented in Dr. Weinbach's motion for summary judgment in this case.  *See **Mason v. Orthodontic Centers of Colorado, Inc.**,* Case No 06-cv-00068-MSK-MJW, order [#56], filed September 14, 2007 (***Mason*** order).  Judge Krieger analyzes the relevant provisions of the Dental Practice Law of Colorado,  §§12-35-101 to 12-35-202, C.R.S., and the agreement between the parties to that case.  The provisions of the agreement at issue in Judge Krieger's case are substantially similar to the contract provisions at issue in this case.  I agree with Judge Krieger's thorough analysis and with her conclusion that such provisions are void as against the public policy of the state of Colorado.  I analyze the relevant provisions of the agreement between Dr. Weinbach and the defendants, below.

## IV.  FACTS

In their briefing on the plaintiffs' motion for summary judgment, the parties do not identify any genuine issues of material fact that preclude the entry of summary judgment on the narrow question presented in the motion.  The parties do not dispute that they entered into the BMA, nor do they dispute the accuracy of Exhibit 3, a copy of the BMA.  Rather, the parties present argument on two question of law: 1) whether or not the BMA violates Colorado law; and 2) whether any such violation makes the BMA unenforceable as against public policy under Colorado law.

Under Section II of the BMA, OCS is obligated to provide all business and administrative support services reasonably required for the day-to-day operations of Dr. Weinbach's practice. The services OCS is obligated to provide include: marketing

4

support; employment and training of all office staff; providing and maintaining office

space; providing and maintaining all necessary equipment and supplies (including

dental equipment and dental supplies); billing services; collection services;

bookkeeping services; processing and payment of accounts receivable and trade

receivables;

preparation of statistical analyses and financial statements; and consulting advice.

Further, under ¶ 2.1 of the BMA, Dr. Weinbach and Weinbach P.C. appointed OCS as

their "sole business manager" for the provision of the foregoing services.

Under ¶ 2.2 of the BMA, OCS agreed to acquire or otherwise arrange for, and to

maintain, all furniture, fixtures, leasehold improvements and equipment, including

dental equipment, necessary to equip Dr. Weinbach's practice subject to the BMA.

Under ¶ 2.2 of the BMA, OCS agreed to lease or otherwise obtain, and to maintain,

office space where Dr. Weinbach could practice orthodontics.

Under ¶ 2.3 of the BMA, OCS agreed to employ and provide all staff reasonably

required to support the operation of Dr. Weinbach's orthodontic practice at the BMA

Offices, except orthodontists and dental hygienists.  Under ¶ 2.9 of the BMA, Dr.

Weinbach was prohibited from developing other orthodontist offices without OCS's

mutual agreement.  Section 2.10 of the BMA gives OCS an exclusive special power of

attorney and OCS was appointed as Dr. Weinbach's "true and lawful attorney-in-fact" to

collect all payments made by Dr. Weinbach's patients and all payments made on behalf

of Dr. Weinbach's patients (such as payments from insurance companies).  Such funds

were then deposited into a designated "Orthodontic Entity Account."  Under ¶¶ 2.10

and 2.11 of the BMA, OCS had signatory authority over the designated "Orthodontic

Entity Account" and also had the exclusive right to make disbursements from that account.

Under ¶ 3.7 of the BMA, Dr. Weinbach was required to maintain a full time orthodontic practice throughout the term of the BMA.  Dr. Weinbach was required to pay OCS a monthly "Management Fee" that included, but was not limited to, the sum of 50 percent of Dr. Weinbach's Net Operating Margin.  BMA ¶ 4.1.  Under ¶ 4.1(d) of the BMA, OCS could increase the amount of the monthly "Management Fee" owed by Dr. Weinbach if OCS determined at the end of each quarter, based on its own bookkeeping, that Dr. Weinbach owed additional payments.

### IV.  ANALYSIS

#### A.  Fee Sharing

Section 12-35-129(1)(v), C.R.S., provides that the Board of Dental Examiners may take disciplinary action against a dentist licensed in Colorado who "shar[es] any professional fees with anyone except those with whom the dentist . . . is lawfully associated in the practice of dentistry."  Section 12-35-116, C.R.S., prohibits an association in the practice of dentistry except among those licensed to practice dentistry or dental hygiene.  The same statute explicitly prohibits the practice of dentistry by a corporation, "except by a professional service corporation of licensees." *Id*.  In essence, a dentist may share fees only with another licensed dentist or dental hygienist with whom the dentist is lawfully associated in the practice of dentistry.  It is undisputed that neither OCC nor OCA are licensed to practice dentistry.

Dr. Weinbach argues, and I agree, that the BMA creates and arrangement that entitles the defendants to receive, for at least 20 years, approximately 50 percent of Dr.

Weinbach's profits.  BMA ¶ 4.1.  Although the fee calculation provided in the BMA is more complex that simply a 50 percent cut to the defendants, the net effect of the calculation is that the defendants are entitled to a percentage share of the fees earned by Dr. Weinbach.

The defendants argue that the BMA does not amount to fee sharing because 1) the statute prohibits only the sharing of referral fees; and 2) the fees payable under the BMA are for marketing services, and such fees are permitted by Colorado law.  Further, the defendants argue that even if the agreement does constitute improper fee sharing, such a violation does not require that the contract be voided.  I conclude, as did Judge Krieger, that the BMA provides for fee sharing in violation of §12-35-129(1)(v), C.R.S., and that this violation requires that the fee sharing provisions of the contract be voided.

The fee sharing prohibition of §12-35-129(1)(v), C.R.S., includes "any professional fees," and is not explicitly limited to referral fees.  As the plaintiffs note, this language is broader than the other fee sharing prohibitions applicable to other Colorado licensed health care professionals, which prohibitions refer specifically to referral fees.  See §12-33-117(1)(s), C.R.S.  (chiropractors); §12-36-125(1)(a), C.R.S. (physicians); §12-40-118(1)(l), C.R.S.  (optometrists); §12-41-115(1)(j), C.R.S. (physical therapists); §12-43-222(1)(q), C.R.S. (mental health professionals).  At its inception, the statutory fee sharing prohibition for Colorado dentists prohibited dentists from "[s]haring any professional fees with anyone or paying any person for sending or referring patients."  C.S.A., Chap 52, §12(11) (Exhibit 9).  This provision was modified in 1961.  At that time, the language prohibiting the payment of referral fees was deleted, and the fee sharing prohibition was modified to state that dentists are

prohibited from "[s]haring any professional fees with any one except those with whom [they are] lawfully associated in the practice of dentistry."  1961 Colo. Sess. Laws, Ch. 111, §19(2)(p).  Exhibit 10.  Essentially, the same language remains in § 12-35-129(1)(v).

The sensible interpretation of the plain language of the statute is that fee sharing of any kind, including referral fees, is prohibited unless the dentist is sharing the fees with those with whom he or she lawfully is associated in the practice of dentistry.  The fee sharing prohibitions applicable to other health care professionals demonstrate that the Colorado legislature readily is capable of limiting a fee sharing restriction to referral fees.  I conclude that the absence of such a limitation in §12-35-129(1)(v) was intentional and not accidental.

The defendants also cite dictionary definitions in support of its argument that the fee sharing prohibition of §12-35-129(1)(v) is limited to referral fees.  I agree with Judge Krieger's analysis on the application of these dictionary definitions to an interpretation of the statute.  *Mason* order, pp. 8 - 9.  I reject the defendant's argument that these definitions show that the fee sharing prohibition of §12-35-129(1)(v) is limited to referral fees.

The defendants argue also that the fee sharing provisions of the BMA fall within an exception to the fee sharing prohibition of §12-35-129(1)(v), which permits fee sharing when a dentist "pays to an independent advertising or marketing agent compensation for advertising or marketing services."  The BMA does require the defendants to provide advertising and marketing services, but it also requires the defendant to provide a large variety of other services that do not constitute advertising

8

and marketing, including business and administrative support services, employment and training of office staff, provision and maintenance of office space, provision and maintenance of equipment and supplies, billing services, and collection services.  BMA ¶¶ 2.1 - 2.12.  A small portion of the services specified in the BMA may fall within this exception, but the vast bulk of the services specified in the BMA do not fall within this exception.

In short, ¶ 4.1 of the BMA, which provides for management fees, and the other terms of ¶¶ 4.1 - 4.5 which are necessary to the application of ¶ 4.1, violate the fee sharing prohibition of §12-35-129(1)(v), C.R.S.  There is no reasonable reading of the BMA that would permit the BMA to be interpreted such that the BMA would not violate this fee sharing prohibition.

### B.  Contract Void Against Public Policy

The defendants argue that even if the BMA includes provisions that are in violation of Colorado law, such a violation or violations do not necessarily demonstrate that the contract is void as against public policy.  In *Mason*, Judge Krieger expatiated a detailed and comprehensive analysis of this issue as it related to the fee sharing provision of the agreement at issue in *Mason*, which provision Judge Krieger found to be in violation of §12-35-129(1)(v), C.R.S.  Judge Krieger's analysis of the public policy issue was based, in part, on arguments from counsel in *Mason* that are, in all relevant respects, essentially identical to the arguments presented in this case.  Although the contract at issue in *Mason*  was different, in some respects, from the BMA, those differences are inconsequential in determining whether the fee sharing portions of the BMA are void as against public policy.  Judge Krieger's analysis of this issue in *Mason*

is directly applicable to the present case.  Rather than re-state Judge Krieger's analysis as my own, I simply will quote from the relevant portion of Judge Krieger's order in *Mason*.  Where Judge Krieger referred to "the Agreement" at issue in *Mason*, I have substituted in brackets the shorthand reference to the agreement at issue in the present case, [BMA].  For the sake of readability, I will maintain double spacing in this lengthy quotation.

It is a long-standing axiom of contract law that a contractual provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy. *FDIC v. American Cas. Co.*, 843 P.2d 1285, 1290 (Colo. 1992), citing *Restatement (Second), Contracts*, § 178. Whether the parties entered into the contract in good faith, and whether they performed the contract according to its terms are irrelevant to the inquiry. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108-09 (Colo. 1992). The rule exists not to protect the party seeking to avoid its obligations under the agreement, but rather, for the protection of the public at large. *Pierce v. St. Vrain Valley School Dist.*, 944 P.2d 646, 649 (Colo. App. 1997), rev'd on other grounds, 981 P.2d 600 (Colo. 1999).

The Colorado legislature has, at times, expressly stated that contracts contravening particular legislative enactments are deemed void. *See e.g. Ingold v. AIMCO/Bluffs, LLC*, 159 P.3d 116, 123 (Colo. 2007), citing C.R.S. § 38-12-103(7) (voiding contractual waivers of rights under Security Deposits Act) and C.R.S. § 8-4-125 (voiding waivers of rights

under Wage Claim Act).  However, the Court's ability to void a contract on public policy grounds does not depend upon the legislature expressly providing for it. Section 178(1) of the **Restatement of Contracts**, cited with approval by the Colorado Supreme Court in **American Casualty**, **supra**, explains that an expressed legislative intent to nullify such agreements is only one of two alternative ways in which a contract can be rendered void. That section states, "[a] promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." **Restatement, supra** (emphasis added). Commentary to this section states that "Only infrequently does legislation, on grounds of public policy, provide that a term is unenforceable. When a court reaches that conclusion, it usually does so . . . although [the legislature] says nothing explicitly about unenforceability." **Id.**, comment b. Where the legislature does not expressly provide for invalidity of contrary contractual provisions, the Court must weigh the legitimate interests of the parties against the weight of the policy and its connection with the parties' conduct. **Id.**, § 178(2), (3); **Norton Frickey, PC v. James B. Turner, PC**, 94 P.3d 1266, 1267 (Colo. App. 2004) ("a contract provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy").

*    *    *    *

11

Turning . . . to the **Restatement**, Section 179 provides that the existence of a public policy favoring the voiding of an agreement can be derived from legislation itself, or from judicially-recognized needs to protect public welfare. The Defendants quote a portion of comment b to this section, to the effect that "civil sanctions . . . may suggest that no other sanction such as unenforceability is intended." The actual text of comment b is far more equivocal:

> When proscribing conduct, however, legislators seldom address themselves explicitly to the problems of contract law that may arise in connection with such conduct. Usually they do not even have these problems in mind and say nothing as to the enforceability of terms. In such situations it is pointless to search for the "intention of the legislature," and the court's task is to determine on its own whether it should, by refusing to enforce the promise, add a sanction to those already provided by the legislature. . . The legislation is significant, not as controlling the disposition of the case, but as enlightening the court concerning some specific policy to which it is relevant. A court will examine the particular statute in the light of the whole legislative scheme in the jurisdiction to see, for example, if similar statutes in the same area contain explicit provisions making comparable promises unenforceable. It will look to the purpose and history of the statute. The fact that the statute explicitly prohibits the making of a promise or the engaging in the promised conduct may be persuasive in showing a policy against enforcement of a promise but it is not necessarily conclusive. On the other hand, the fact that the statute provides a civil sanction, whether in addition to a criminal penalty or not, may suggest that no other civil sanction such as unenforceability is intended, but this is not necessarily conclusive either.

**Restatement (Second), Contracts**, § 179, comment b [emphasis added].

Far from suggesting that the existence of a disciplinary penalty for fee sharing operates as an exclusive remedy, thereby prohibiting nullification

of a fee-sharing agreement, this language suggests that the professional penalty is but a single, possibly inconclusive factor to be weighed among many others.

\*   \*   \*   \*

Because Colorado's Supreme Court has cited Section 178 of the Restatement with approval, and no other Colorado caselaw presents a comprehensive analytical framework for deciding when to impose the judicially-created remedy of voidness as against public policy, the Court will engage in the analysis counseled by the Restatement. In conducting Section 178's balancing, the Court considers the following factors: (i) the parties' justified expectations; (ii) any forfeiture that would result if enforcement were denied; (iii) any special public interest in the enforcement of a particular term; (iv) the strength of the public policy at issue; (v) the likelihood that refusal to enforce the agreement will further that interest; (vi) the seriousness of the misconduct involved and its wilfulness; and (vii) the directness of the connection between the misconduct and the agreement. ***Restatement (Second), Contracts***, § 178(2), (3). In addition, Section 179 of the Restatement describes further factors that warrant some consideration, including the existence of similar statutory regulations in other contexts that provide for voiding unlawful agreements, and the penalties expressly provided for by the legislature. ***Id.***, § 179, comment b.

There can be little doubt that the Defendants had some justifiable

expectation that the [BMA] would be enforceable, and indeed, the parties have treated it as such and performed according to its terms for several years. There is some reason to question whether the Defendants had complete confidence in the enforceability of the [BMA] as written, as the [BMA] contains several disclaimers seeking to avoid any construction that would suggest that the Defendants are engaged in the practice of dentistry, and provides for severability should that occur. But, in general, the Court finds that the parties legitimately expected that the [BMA] would be performed according to its terms, and finds that this factor weighs substantially in favor of enforcement.

The second factor, the degree of forfeiture that would result if the contract were voided is not nearly as favorable to the Defendants. Although voiding of the contract would deprive the Defendants of compensation according to the [BMA]'s formula, there is no apparent reason why the Defendants could not pursue an equitable claim for unjust enrichment as to the reasonable value of the services it has provided to the Plaintiffs for which it has not received payment. Although Colorado courts have refused to invoke equitable doctrines to substitute for enforcement of an agreement that is void as against public policy, it is clear that this limitation only applies to prevent a wrongdoer from recovery. *See Equitex, Inc. v. Ungar*, 60 P.3d 746, 750 (Colo. App. 2002). Assuming that the Defendants can show that their own conduct was proper, there appears to be no reason why they could not recover the

fair value of the services they have already provided to the Plaintiffs. Thus, this factor tips significantly in favor of voiding the contract.

The Court can discern no specific public policies that would be advanced by enforcing the contract, other than the general policies reinforcing the stability of contract law. Thus, it turns to the strength of the public policy at issue here. Colorado has long regulated the conduct of dentists, and has continuously maintained statutory prohibitions against fee sharing since 1935. 1935 C.S.A Ch. 52, § 12(11). Although the Colorado courts have never directly discussed the rationale behind rules prohibiting fee-splitting, several justifications for the ban are evident, including the need for dentists to avoid financial conflicts of interest, the need for informed consent by the patient, and the necessity of avoiding non-professional interference in professional decisionmaking.  The importance of the prohibition is underscored by the penalties available for a violation of C.R.S. §12-35-129, which include a range of potential sanctions, up to and including suspension or revocation of a dentist's license.  Although these penalties apply to a range of unprofessional conduct that includes fee-splitting as one of many prohibited practices, there can be no dispute that Colorado views fee splitting by dentists as a disciplinary infraction that could result in severe penalties. On the whole, the Court finds that the importance of the public policy weighs strongly against enforcing the [BMA].

The final three factors generally examine the closeness of the

connection between the pubic policy and the nature of the [BMA]. Here, the [BMA]'s formula clearly calculates the fees payable to the Defendants as a direct percentage of fees paid for dental services. This is undoubtedly a form of fee splitting that violates the statute. Thus, voiding the [BMA] would directly further the public policy of prohibiting fee splitting.  By contrast, allowing the Defendants to nevertheless enforce the [BMA] would effectively condone that which the Colorado legislature has sought to prohibit. The record does not reflect the extent to which the Plaintiffs' decision to enter into an [a]greement that provided for prohibited fee sharing was knowing or intentional, but the Court finds that, even if it were to assume that the Plaintiffs were fully aware that the [BMA] was violative of the regulations, and did so with the intention of later disclaiming its effect, this factor adds little weight. As the Colorado courts make clear, the good or bad faith of the contracting parties is not of significance in deciding whether the public interest requires a contract to be voided.

Finally, the Court considers those additional factors discussed in comment b to Section 179 of the Restatement. As noted above, Colorado prohibits fee splitting in many of its regulated professions, but none of those regulatory schemes address the question of whether an agreement for professional services that impermissibly splits fees is voidable. The fact that the statute only proposes discipline for the dentist agreeing to split the fees is not persuasive evidence that the legislature intended such

agreements to be enforceable against the dentist. Logically, the

Defendants cannot seek to enforce the [BMA] into the future, as doing so

would force the Plaintiffs to continuously violate state law. If the [BMA]

can be voided prospectively on public policy grounds, there is little logic

in finding that the same public policies do not permit it to be voided

retrospectively as well. Once again, any unfairness to the Defendants that

results from voiding the [BMA] in its entirety is largely mitigated by the

available remedy of a claim for unjust enrichment.

***Mason v. Orthodontic Centers of Colorado, Inc.***, Case No 06-cv-00068-MSK-MJW,

order [#56], filed September 14, 2007, pp. 10 - 19 (footnotes omitted).

Based on Judge Krieger's thorough analysis, which is readily applicable to the

BMA at issue in this case, I conclude that the public interest in prohibiting fee splitting,

as stated in §12-35-129(1)(v), C.R.S., substantially outweighs any private interests that

OCC and OCA may have in enforcing the payment terms of the BMA.  The public

interest in question is strong, and the conduct contemplated by the BMA directly

contravenes the terms and purposes of the applicable Colorado statute.  No doubt,

voiding the BMA works some inequity and hardship on the defendants, but those

consequences are not unreasonable in the context of this case.  Notably, the law likely

will permit the defendants to recover the reasonable value of the services they have

provided.  Therefore, I find that the portions of the BMA that require or permit fee

sharing, including ¶ 4.1 of the BMA, which provides for management fees, and the

other terms of ¶¶ 4.1 - 4.5 which are necessary to the application of ¶ 4.1, are void as

against public policy and are, therefore, unenforceable.

C.  Maintenance of Dental Proprietorship

Section 12-35-112, C.R.S., prohibits the "practice of dentistry" in Colorado except by persons who "are duly licensed as dentists . . . ."  Section 12-35-113, C.R.S., provides that a person shall be deemed to be practicing dentistry if such person is "a proprietor of a place where" dental services are performed.  § 12-35-113(b).  Under §12-35-103(14), C.R.S., a proprietor includes any person who

> (b) Places in possession of a dentist . . . such dental material or equipment as may be necessary for the management of a dental office on the basis of a lease or any other agreement for compensation for the use of such material, equipment, or offices; or

> (c) Retains the ownership or control of dental equipment or material or a dental office and makes the same available in any manner for use by dentists . . . ; except that nothing in this paragraph (c) shall apply to bona fide sales of dental equipment or material secured by a chattel mortgage or retain-title agreement or to the loan of articulators.

The BMA provides that: 1) OCS or OCA "will lease or sublease to [Dr. Weinbach], the office space, furnishings and equipment required to operate [his] practice . . . ;" and 2) "OCS will be responsible for managing the Center's inventory and supplies and, in consultation with [Dr. Weinbach], for purchasing the inventory and supplies required by the Center."  BMA ¶¶ 2.2, 2.5.  On termination of the BMA, the terms of the BMA require Dr. Weinbach to purchase from OCS "all of the equipment of the Center, including all replacements and additions thereto made by OCS pursuant to the performance of its obligations under this Agreement, and all other assets, including inventory and supplies . . . ."  BMA ¶ 6.4 (d).  Under these provisions, OCS and OCA clearly retain ownership of all of the equipment and supplies used in the dental practice.

As in **Mason**, there is no doubt that under the above-cited provisions of the

BMA, the defendants are engaged in the practice of dentistry because they are proprietors of a dental office.  Under the BMA, the defendants place "in possession of a dentist . . . such dental material or equipment as may be necessary for the management of a dental office on the basis of a lease or . . . other agreement for compensation for the use of such material, equipment, or offices."  §12-35-103(14)(b), C.R.S.  The defendants also retain "the ownership or control of dental equipment or material or a dental office and makes the same available . . . for use by dentists . . . ." §12-35-103(14)(c).  The defendants do not argue that any of the exceptions specified in §12-35-103(14)(c) are applicable to them, and it is clear that none of these exceptions are applicable.   By taking these actions, the defendants have become proprietors of a dental office, as defined by §12-35-103(14)(b) and (c).  As proprietors of a dental office, the defendants are practicing dentistry, as defined in §12-35-113(b). I reject the defendants' contrary arguments.  The defendants are not licensed to practice dentistry, and such practice is unlawful.  §12-35-112, C.R.S.

In short, ¶¶ 2.2, 2.5, and 6.4 of the BMA require the defendants to take actions that constitute the practice of dentistry under Colorado law.  These paragraphs, as well as any other provisions of the BMA that fall within the definition of proprietor as stated in §12-35-103(14)(b) and (c), are in violation of Colorado law because the require the defendants to practice dentistry in Colorado even though the defendants are not licensed to practice dentistry.  Such unlicensed practice is unlawful.  § 12-35-112, C.R.S.   There is no reasonable reading of the BMA that would permit the BMA to be interpreted such that the BMA would not require the defendants to engage in the unlicensed practice of dentistry.

Based on the balancing of the factors specified in the **Restatement (Second),**

**Contracts**, § 178, and applying the analysis detailed in Section IV, B, of this order, I

conclude that ¶¶ 2.2, 2.5, and 6.4 of the BMA, as well as any other provisions of the

BMA that fall within the definition of proprietor as stated in §12-35-103(14)(b) and (c),

are void as against public policy.  The balancing factors applicable to these portions of

the BMA is essentially identical to the balancing of factors applicable to the fee sharing

provisions of the BMA.

D.  Unlawful Financial Interest in Dental Practice

The plaintiffs argue also that the fee sharing provisions of the BMA effectively

give the defendants a financial interest in Dr. Weinbach's dental practice.  The plaintiffs

argue that a corporation is prohibited from holding a financial interest in a dental

practice because §12-35-116(1), C.R.S. prohibits the "conduct of the practice of

dentistry . . . in a corporate capacity," unless the corporate entity is a professional

service corporation.  I agree with Judge Krieger's conclusion that there is nothing in the

text of this statute that indicates clearly that the maintenance of a financial interest in a

dental practice by a corporation necessarily is contrary to public policy.  **Mason** order,

p. 23.  In any case, I have concluded already that the provisions of the BMA which

arguably create this prohibited corporate interest, the fee sharing provisions of the

BMA, are void as against public policy.  Therefore, even if the BMA creates a

prohibited corporate interest in a dental practice, and that interest is void as against

public policy, the plaintiffs would not be entitled to any additional relief on this basis.

E.  Provider Network Statutes

The defendants argue also that the BMA is permissible under the Colorado statutes that permit the creation of provider networks.  §§6-18-301 to 6-18-304, C.R.S. A properly organized provider network can include a joint venture, or a variety of other business entities, involving a licensed practitioner and a person who does not hold a license to practice.  §6-18-103(2), C.R.S.  I conclude that the provider network provisions of Colorado law are not applicable to the BMA, OCC, or OCA.

Under §6-18-301.5(2), C.R.S., a provider includes state-licensed, state-certified, or state-authorized facilities, and practitioners.  There is no evidence in the record that indicates that OCC or OCA operate a state-licensed, state-certified, or state-authorized facility.  The requirement of licensure, certification, or authorization requires a specific authorization, certification, or license from the state.  There is no indication that OCC or OCA hold any such authorization from the state of Colorado with regard to the BMA. Neither OCC or OCA are licensed practitioners.  OCC and OCA are not providers, and thus OCC and OCA cannot be part of a provider network under §6-18-302, C.R.S. Colorado's provider network statutes do not make the BMA lawful.

## V.  CONCLUSION & ORDERS

I conclude that the undisputed facts in the record of this case demonstrate that the provisions of the BMA detailed above are void as against the public policy of the state of Colorado.  The remedy for or consequence of this determination is not yet ripe for determination.  The Bankruptcy Court granted the plaintiffs relief from the automatic stay only for the purpose of permitting a determination of whether or not the BMA is "illegal because it violates state law by [its] very provisions and not because of the way [it was] enforced or performed over a period of time."  *Plaintiffs' sur-reply* [#40], filed

September 21, 2006, Exhibit A, p. 4 (Order of the Honorable Jerry A. Brown, United States Bankruptcy Judge, Eastern District of Louisiana).  My determinations in this order are limited to that issue.

The defendants have filed bankruptcy petitions in Louisiana.  In view of the pending bankruptcy proceedings, it is far from certain that resolution of the remaining claims and issues presented in the plaintiffs' complaint will be necessary or proper in the future.  In view of this uncertainty, I order that this case be closed administratively, subject to re-opening on a showing of good cause.

THEREFORE, IT IS ORDERED as follows:

1.  That the plaintiffs' **Motion for Summary Judgment Declaring Defendants' Business Management Agreement Illegal** [#41], filed November 21, 2006, is **GRANTED**;

2.  The court **DECLARES** that the portions of the BMA that require fee sharing, including ¶ 4.1 of the BMA, and the provisions of ¶¶ 4.1 - 4.5, which are necessary to the application of ¶ 4.1, ¶ 2.2, 2.5, and 6.4 of the BMA, which provide for the maintenance of a dental proprietorship by the defendants, are void as against the public policy of the state of Colorado; and

3.  That under **D.C.COLO.LCivR 41.2**, the clerk is **DIRECTED** to close this action administratively subject to reopening for good cause.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**